UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLAIR HAYS,<br><br>        Plaintiff,<br><br>    v.<br><br>J. GASTELO, et al.,<br><br>        Defendants. | Case No. CV 20-2764-AB (JEM)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Andre Birotte, Jr., United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**INTRODUCTION**

Blair Hays ("Plaintiff"), a state prisoner presently incarcerated at the California Men's Colony ("CMC") in San Luis Obispo, California, brings this action pursuant to 42 U.S.C. § 1983 against Defendants Warden J. Gastelo, Manager J. Bonnifield, and J. Stout, all of whom are employed by the California Department of Corrections and Rehabilitation ("CDCR") at CMC. (Dkt. 9, First Amended Complaint ("FAC") at 2.)[1] Plaintiff alleges a violation of his First Amendment right to free exercise of his religion based on CMC's

---

[1] The Court refers to the pages of the FAC as numbered by the CM/ECF system.

Religious Meat Alternative ("RMA") diet policies. (See FAC at 3-5.) Plaintiff requests money damages as well as injunctive and declaratory relief. (Id. at 3.)

On September 9, 2020, Defendants filed a Motion for Judgment on the Pleadings ("Motion"). On November 30, 2020, Plaintiff filed an Opposition. On December 10, 2020, Defendants filed a Reply. On December 22, 2020, Plaintiff filed a "Request/Motion for Judicial Notice," which the Court construes as a Sur-Reply. The Motion is ready for decision.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges the following:

On July 16, 2018, Plaintiff was transferred to CMC from Calipatria State Prison ("Calipatria"), where he had been receiving RMA meals. (FAC at 4.) Plaintiff possessed a "CDCR-30B RMA Dietary Card" from Calipatria indicating that he had been approved for an RMA diet. (Id.)

It was the policy at CMC to require inmates to submit a request to be placed on the Approved Dietary List ("List") in order to receive a religious diet, even if an inmate had a religious diet card from another institution. (FAC at 3-4.) There was also a 30-day waiting period before inmates new to CMC would be placed on the List. (Id.)

Upon his arrival at CMC, Plaintiff attempted to use his dietary card from Calipatria, but was told by prison staff that he needed to be on the List in order to receive RMA meals. (Id. at 4-5, 24.) Plaintiff "asked to be added to the [L]ist but never received notice or anything about the procedure." (Id. at 17; see also id. at 3, 15.) On October 8, 2018, Plaintiff "put in a 22 form" apparently to request an RMA diet, "but never received a response." (Id. at 17.) Plaintiff filled out an inmate appeal form outlining his complaints, dated November 27, 2018, which was stamped by the CMC Appeals Office on November 30, 2018. (Id.) On December 6, 2018, Plaintiff's inmate appeal was received by Community Resource Manager Bonnifield. (Id. at 8). Plaintiff was added to the List that day and began receiving RMA meals. (Id. at 5, 8.)

2

Defendants J. Gastelo and J. Bonnifield violated Plaintiff's First Amendment rights by implementing and maintaining policies at CMC requiring inmates to be placed on the List prior to receiving religious meals, not honoring religious diet cards issued by other institutions, and requiring newly arrived inmates to wait thirty days before they would be placed on the List. (FAC at 5.) Defendant J. Stout and other unnamed officers violated Plaintiff's First Amendment rights when they refused to provided Plaintiff with RMA meals until he was on the List. (Id. at 4-5.) These officers repeatedly told Plaintiff that he needed to be on the List before he would receive RMA meals and that they had the discretion to provide Plaintiff with those meals but would not do so. (Id. at 4.) Defendant Stout stated, "I do have discretion to give you a RMA tray but it's not my problem." (Id.)

## LEGAL STANDARDS

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that the moving party is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989). A motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Cafasso v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (applying the pleading standards described in Ashcroft v. Iqbal, 556 U.S. 662 (2009), to a motion brought under Rule 12(c)); see also Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). The only significant difference is that a Rule 12(c) motion is properly brought "after the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c); see also Cafasso, 637 F.3d at 1054-55; Dworkin, 867 F.2d at 1192. In resolving a motion for judgment on the pleadings, a court may consider the pleadings, documents attached to the pleadings, and facts that "are contained in materials of which the court may take judicial notice." Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999).

In order to defeat a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its

face.'" Iqbal, 556 U.S. at (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Conclusory allegations are insufficient. Id. at 678-79. Although a complaint does not need detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not do," and the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

All allegations of material fact are accepted as true, "as well as all reasonable inferences to be drawn from them." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001); see also Twombly, 550 U.S. at 555. For an allegation to be entitled to the assumption of truth, however, it must be well-pleaded; that is, it must set forth a non-conclusory factual allegation rather than a legal conclusion. See Iqbal, 556 U.S. at 678-79. The Court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. See id.; see also Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss"); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (court not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

In a pro se civil rights case, "the court must construe the pleadings liberally and must afford the plaintiff the benefit of any doubt." Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988) (citation omitted). However, courts must not "supply essential elements of claims that were not initially pled." Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

**DISCUSSION**

Defendants argue that they are entitled to judgment on the pleadings because the facts alleged do not establish a constitutional violation and, even if a constitutional violation occurred, they are entitled to qualified immunity.

I.  **Prisoners' Right to Free Exercise of Religion**

"[P]risoners retain the protections of the First Amendment," but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1997)). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008). However, a prison regulation may impinge upon an inmate's right to free exercise of religion "'if it is reasonably related to legitimate penological interests.'" Id. at 884-85 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

The Ninth Circuit has explained:

> A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion. A substantial burden . . . places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs. . . . To ensure that courts afford appropriate deference to prison officials, the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. The challenged conduct is valid if it is reasonably related to legitimate penological interests.

Jones v. Williams, 791 F.3d 1023, 1031-32 (9th Cir. 2015) (internal quotations and citations omitted) (emphasis added).

A policy requiring prisoners to submit a request prior to receiving religious meals is reasonably related to legitimate penological interests and is not unconstitutional. Resnick v. Adams, 348 F.3d 763, 770-71 (9th Cir. 2003); McKenzie v. Ellis, 541 F. App'x 784, 785 (9th Cir. 2013) ("[R]equiring [an inmate] to re-apply to the religious diet program at his new prison [was] related to valid penological interests and did not unduly burden his ability to practice his religion."); see also Woods v. Paramo, 2019 WL 3532831, at *6 (S.D. Cal. Aug. 2, 2019); Taylor v. Pelican Bay, 2010 WL 2671989, at *7-8 (N.D. Cal. July 2, 2010). Moreover, delays resulting from a prison policy regarding religious diets do not typically constitute a substantial burden on an inmate's religious rights. See Terrell v. Ducart, 2019 WL 2503651, at *3 (N.D. Cal. June 17, 2019) (finding that a two-month delay in receiving religious diet did not violate inmate's constitutional rights); Green v. Paramo, 2018 WL 6062359, at *4 (S.D. Cal. Nov. 20, 2018) (recognizing that no precedential authority grants inmates a constitutional right to a speedy application process for religious diets, and concluding that a five-month delay in processing a religious diet application was not a clearly established constitutional violation); Taylor, 2010 WL 2671989, at *8 (finding that a two-month delay in processing religious diet application was not a constitutional violation even though plaintiff was previously approved for religious diet at another prison and was required to go through another verification process at new prison).

## II. Qualified Immunity

Courts recognize qualified immunity "to balance competing values: not only the importance of a damages remedy to protect the rights of citizens . . . but also 'the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.'" Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982) (quoting Butz v. Economou, 438 U.S. 478, 506 (1978)); see also United States v. Lanier, 520 U.S. 259, 265 (1997) (noting that recognition of qualified immunity arose from the "irony that a prosecution to enforce one application of [the Constitution's] spacious protection of liberty can threaten the accused with deprivation of another"). As such, "[o]nce the official pleads qualified immunity, the burden is on the plaintiff to prove two

elements: (1) that the right was violated; and (2) that the right was clearly established at the time of the alleged misconduct." Isayeva v. Sacramento Sheriff's Dep't, 872 F.3d 938, 946 (9th Cir. 2017). "The second prong requires [the court] to analyze two discrete sub-elements: whether the law governing the conduct at issue was clearly established and whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." Easley v. City of Riverside, 890 F.3d 851, 856 (9th Cir. 2018) (internal quotation marks omitted); see also Torres v. City of Madera, 648 F.3d 1119, 1127 (9th Cir. 2011) ("While the constitutional violation prong concerns the reasonableness of the officer's mistake of fact, the clearly established prong concerns the reasonableness of the officer's mistake of law.") (emphasis in original); Robinson v. Solano County, 278 F.3d 1007, 1012 (9th Cir. 2002) (en banc) ("[T]he standard of reasonableness for purposes of qualified immunity is distinct from the standard of reasonableness embodied in the Fourth Amendment.").

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 577 U.S. 7, 11 (2015) (per curiam) (internal quotation marks omitted); see also Plumhoff v. Rickard, 572 U.S. 765, 778-79 (2014) ("[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."). In determining whether a right is clearly established, there does not need to be a "case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011); see also District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018) ("Wesby") ("The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (internal quotation marks omitted); Thompson v. Rahr, 885 F.3d 582, 587 (9th Cir. 2018) ("For a right to be 'clearly established,' existing precedent must have placed the statutory or constitutional question beyond debate, such that 'every' reasonable official, not just 'a' reasonable official, would have understood that the was

violating a clearly established right.") (emphasis omitted). "This requires a high degree of specificity." Wesby, 138 S. Ct. at 590 (internal quotation marks omitted); see also City of Escondido v. Emmons, 139 S. Ct. 500, 503 (2019) ("[T]he clearly established right must be defined with specificity."). "Thus, the dispositive question is whether the violative nature of particular conduct is clearly established." Thompson, 885 F.3d at 587 (internal quotation marks omitted).

"'[I]t is not necessary that the alleged acts have been previously held unconstitutional' in order to determine that a right was clearly established, 'as long as the unlawfulness [of defendant's actions] was apparent in light of pre-existing law.'" Bonivert v. City of Clarkston, 883 F.3d 865, 872 (9th Cir. 2018). There can be "the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." Vazquez v. City of Kern, 949 F.3d 1153, 1164 (9th Cir. 2020) (quoting Wesby, 138 S. Ct. at 590). The relevant inquiry is "whether the officer had fair notice that her conduct was unlawful." Nicholson v. City of Los Angeles, 935 F.3d 685, 690 (9th Cir. 2019). It is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established." Shafer v. Cty. of Santa Barbara, 868 F.3d 1110, 1118 (9th Cir. 2017) (internal quotation marks omitted).

A court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009); see Felarca v. Birgeneau, 891 F.3d 809, 815-16 (9th Cir. 2018) (same). Here, the Court exercises its discretion and proceeds directly to the second prong to consider whether the applicable law was clearly established at the time of the alleged constitutional violations.

### III. Defendants Are Entitled to Qualified Immunity

In deciding this Motion, the Court has construed the pleadings liberally and considered the facts alleged in the light most favorable to Plaintiff. He challenges the constitutionality of CMC's policies requiring inmates to be on the List at CMC before receiving religious meals, refusing to accept religious diet cards from other institutions, and

requiring new inmates to wait thirty days before being placed on the List. (FAC at 3-5.) When Plaintiff attempted to use his religious diet card from Calipatria, he was refused RMA meals and was told that he needed to be on the List before he could receive those meals. (Id. at 3-5.) He submitted a request for an RMA diet on or about October 8, 2018. (Id. at 17.) When he received no response, he filed an inmate appeal on or about November 27, 2018. He was placed on the List on December 6, 2018, and began receiving RMA meals that day. Plaintiff did not receive an RMA diet from July 6, 2018, the date he arrived at CMC, until December 6, 2018, when he was placed on the List. (Id. at 4.)

It is Plaintiff's burden to establish that the right allegedly violated at the time of Defendants' alleged misconduct violated clearly established law. See White v. Pauly, 137 S. Ct. 548, 52 (2017) (clearly established law requires plaintiff to identify "a case where an officer acting under similar circumstances" as the officer in question was held to have violated plaintiff's constitutional rights). "In determining whether a particular right is clearly established, '[t]he question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards.'" Resnick v. Adams, 348 F.3d at 771 n.8 (quoting Saucier, 533 U.S. at 208).

In 2018, it was clearly established that prisoners "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993) (quoting McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987)). The right to free exercise of religion, however, is necessarily limited by the fact of incarceration and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security. O'Lone, 482 U.S. at 348-49. In order to establish a free exercise violation, a prisoner must show that a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. Turner, 482 U.S. at 89; Shakur, 514 F.3d at 883-84. Prisons have a valid interest in keeping their food service system administratively simple. Ward, 1 F.3d at 877.

Plaintiff has not cited, and the Court has not identified, controlling law establishing that the policies at issue were unconstitutional. It did not violate clearly established law to

9

require Plaintiff to submit a new request at CMC in order to be placed on the List to receive an RMA diet. Rather, the Ninth Circuit has held that requiring inmates to submit a request in order to receive religious meals serves legitimate penological interests by "enabl[ing] prison officials to assess the sincerity of an inmate's religious belief," and "aid[ing] in the orderly administration of the prison." Resnick, 348 F.3d at 771 n.8. The Ninth Circuit also has held that prison regulations requiring an inmate "to re-apply to the religious diet program at his new prison were related to valid penological interests and did not unduly burden his ability to practice his religion." McKenzie, 541 F. App'x at 785. Thus, the refusal to accept Plaintiff's dietary card from Calipatria and requiring him to re-apply for an RMA diet at CMC did not violate clearly established law. Plaintiff's contention that imposing a thirty-day waiting period before new inmates were approved for a religious diet, and to the extent that he contends the five-month delay before he received an RMA diet, was unconstitutional, he has not pointed to any precedential authority recognizing a right to a speedier process. Accordingly, Defendants are entitled to qualified immunity.

## **RECOMMENDATION**

The Court, therefore, recommends that the District Court issue an Order: (1) accepting the Report and Recommendation; (2) granting Defendants' Motion; and (3) directing that Judgment be entered dismissing this action with prejudice.

DATED: May 4, 2021

                                               */s/ John E. McDermott*
                                            JOHN E. MCDERMOTT
                                    UNITED STATES MAGISTRATE JUDGE